# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

QUANG VAN NGUYEN,                    :

        Petitioner,     :

v.                                                  CRIMINAL NO. 06-00206-CG-B
                        :     CIVIL ACTION NO. 09-00629-CG

UNITED STATES OF AMERICA,

        :

        Respondent.

        :

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Quang Van Nguyen's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 70), the Government's Response in opposition (Doc. 72), and Petitioner's replies thereto. (Docs. 73, 74). This action was referred to the Undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[1] Because the record is adequate to dispose of this matter, no evidentiary hearing is required. Having carefully reviewed the record, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc.

---

[1] The Honorable United States District Judge Callie V.S. Granade presided over the trial proceedings in this action as to Count One and the guilty plea proceedings as to Count Two and imposed the challenged sentence. On September 24, 2009, Judge Granade referred the matter to the Undersigned Magistrate Judge for entry of a Report and Recommendation. The Undersigned has reviewed the Petitioner's motion and related documents, the transcripts of the guilty plea hearing, the trial, and the sentencing hearing, and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade. Based upon that review, the Undersigned makes the following report and recommendation.

70) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Quang Van Nguyen.

## I. BACKGROUND

On September 28, 2006, Quang Van Nguyen was charged in a three-count indictment for violating 21 U.S.C. § 846, conspiracy to possess with intent to distribute methamphetamine (Count One); 26 U.S.C. § 5861(d), possession of an unregistered firearm (Count Two); and 18 U.S.C. § 924(d), forfeiture of firearms (Count Three).[2] (Doc. 1; Doc. 1 att. 1). On or about November 13, 2006, Nguyen retained Attorney Dennis Knizley to represent him. (Doc. 6).

Nguyen pled guilty on January 18, 2007, without the benefit of a plea agreement, to Count Two of the indictment, possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), and conceded Count Three as to forfeiture. (Docs. 16, 20). Nguyen proceeded to trial on Count One and was found guilty by a jury, on January 19, 2007, of the offense of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 as charged in the indictment. (Doc. 20).

At Nguyen's sentencing hearing conducted on April 19, 2007, Judge Granade sentenced him to 364 months in prison as to Count One and 120 months as to Count Two, the terms to run concurrently; five

---

[2] Counts Two and Three relate to an unregistered twelve-gauge shotgun referred to as a "street sweeper" that was seized from Nguyen's residence on December 20, 2005. (Doc. 1; Doc. 70, att. 1 at 40).

years of supervised release on Count One and three years of supervised release on Count Two following his release from prison, with a special condition of deportation; and an assessment of two hundred dollars. (Doc. 28). On April 25, 2007, Nguyen's trial counsel filed a Notice of Appeal on his behalf (Doc. 29), and on April 30, 2007, the Court granted trial counsel's motion to withdraw as counsel and appointed Attorney W. Gregory Hughes to represent Nguyen on appeal. (Doc. 33). On July 23, 2007, Hughes filed a motion to withdraw as counsel, citing a conflict of interest. The trial court instructed Mr. Hughes to refile the motion with the Eleventh Circuit Court of Appeals. (Docs. 54, 55). The Court of Appeals granted counsel's motion to withdraw and appointed Attorney Richard Brooks Holcomb to represent Nguyen on appeal. (Docs. 60, 63). On November 13, 2008, the Eleventh Circuit Court of Appeals affirmed Nguyen's conviction and sentence, finding no merit to his claims. (Doc. 63). Nguyen filed a petition for a writ of certiorari with the United States Supreme Court. The petition was denied on February 23, 2009. See Quang Van Nguyen v. U.S., ___ U.S. ___, 129 S. Ct. 1382, 173 L. Ed. 2d 636 (2009).

On September 24, 2009, Nguyen filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. 67). On September 25, 2009, the Court ordered Nguyen to refile his motion on this Court's current form, which he did on October 8, 2009. Nguyen has raised the following seven claims: (1) ineffective assistance of trial counsel for failing to contest the search warrant and seizure

of evidence on the ground of insufficient probable cause; (2) ineffective assistance of trial counsel for failing to contest the search warrant on the ground that the executing agency did not have jurisdiction to administer the warrant at that location; (3) ineffective assistance of trial counsel for failing to contest the seizure and forfeiture of firearms and surveillance equipment that were outside the scope of the search warrant; (4) trial counsel's ineffectiveness rendered the guilty plea as to Count Two invalid; (5) ineffective assistance of counsel at sentencing for failing to oppose the drug type and quantity set forth in the Presentence Investigation Report ("PSI") and relied upon at sentencing; (6) ineffective assistance of counsel at sentencing for failing to oppose the two point obstruction enhancement on the basis of insufficient supporting facts as set forth in the PSI and relied upon at sentencing; and (7) ineffective assistance of appellate counsel in failing to raise drug type and quantity on direct appeal. (Doc. 69; Doc. 70, att. 1 at 2-3).

On April 28, 2010, the Government filed a response in opposition to the Motion to Vacate arguing that Petitioner's claims are waived or are without merit. (Doc. 72). On June 14, 2010, and July 19, 2010, Nguyen filed replies to the Government's response, reasserting the merit of his claims.[3] (Docs. 73, 74). The Court now considers

---

[3] The Court construes Nguyen's Doc. 74 as a reply to the Government's response in opposition to the Motion to Vacate and considers it accordingly.

each of those claims.  For purposes of clarity, the Court will address Nguyen's habeas claims out of turn.

<u>II. DISCUSSION</u>

A. <u>Claim Four: Trial Counsel's Ineffectiveness Rendered Guilty Plea on Count Two Invalid</u>.

Nguyen argues that his trial counsel's ineffectiveness rendered his guilty plea "invalid."  (Doc. 70, att. 1 at 17).  Specifically, Nguyen asserts that counsel "tricked" him into pleading guilty to the firearms charge (Count Two) "under the deception" that, if he pled guilty to Count Two, none of the firearms[4] would be admitted at the drug conspiracy trial related to Count One.  (<u>Id.</u> at 17-18).

In addition, counsel allegedly promised him that he would only receive a sentence between twelve to twenty-four months, and counsel failed to inform him that by pleading guilty to Count Two, he was waiving his right to contest the illegal seizure of the "street sweeper" shotgun.  (<u>Id.</u> at 18).  Nguyen states: "[i]n the end, [Petitioner] received no benefit (whats-so-ever) (sic) for his guilty plea, in that, the Court imposed the maximum penalty for that offense (10 years), and the firearms (all of them) were admitted as being evidence consistent with the drug trade."  (<u>Id.</u>).  According to Nguyen, he was not guilty of the offense, and "[t]here was no way that he would have pled guilty unless he expected a substantial benefit for his plea."  (<u>Id.</u> at 20).

---

[4] The police seized thirteen firearms from Nguyen's residence on December 20, 2005, including the "street sweeper" twelve-gauge shotgun which is the subject of Count Two.  (Doc. 70, att. 1 at 40).

The Court begins its analysis of Nguyen's challenge to the voluntariness and intelligence of his guilty plea on Count Two by underscoring that the circumstances under which a guilty plea may be attacked on collateral review are severely limited. It is well settled that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. U.S., 523 U.S. 614, 621 (1998). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Id. (citations and internal quotation marks omitted).

In this action, Nguyen filed a direct appeal raising issues related to his trial and conviction on Count One, the drug conspiracy charge, as well as his sentence on Counts One and Two.[5] (Docs. 43, 63, 70, att. 1 at 7). However, he did not challenge the voluntariness of his guilty plea on Count Two. (Id.). By failing to do so, Nguyen procedurally defaulted the claim that he now advances.[6]

_____

[5] On direct appeal, Nguyen challenged the sufficiency of the evidence of a conspiracy, whether the district court plainly erred by failing to instruct the jury that a buyer-seller relationship does not alone establish a conspiracy, whether the district court plainly erred by using facts found by a judge and not by the jury in determining his sentence, and whether the district court imposed a procedurally and substantively unreasonable sentence. (Doc. 63; Doc. 70, att. 1 at 7).

[6] The courts have recognized an exception to the procedural default rule for claims that could not have been reviewed on direct appeal without further factual development. See Bousley, 523 U.S. at 621-22. However, Nguyen's claim related to his understanding and the voluntariness of his guilty plea could have been fully and completely addressed on direct review based on the record created

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" Id. at 622 (citations omitted). Nguyen has alleged neither cause nor prejudice for his procedural default of Claim Four, nor has he demonstrated actual innocence. Therefore, Nguyen's procedurally defaulted claim is due to be denied.

However, even if Claim Four were not procedurally defaulted, it is due to be denied on the merits. A plea of guilty is "constitutionally valid" if "voluntary" and "intelligent." Id. at 618. A plea is voluntary in a constitutional sense if it was "entered by one fully aware of the direct consequences of the plea," and not induced by threats, misrepresentation, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business." Id. at 619 (citations and internal quotation marks omitted). A plea is intelligent in a constitutional sense if a criminal defendant received "real notice of the true nature of the charge against him." Id. at 618 (citations and internal quotation marks omitted). If the defendant "was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him," his plea was entered intelligently even if at the time of the plea, he "did not correctly assess every

_____

at the plea colloquy. Thus, this exception does not apply to Petitioner's procedural default of habeas Claim Four.

relevant factor entering into his decision." Id. at 619 (citations and internal quotation marks omitted).

The record shows that on January 18, 2007, the first day of his trial, Nguyen pled guilty, without the benefit of a plea agreement, to Count Two of the indictment charging possession of an unregistered firearm, i.e., the "street sweeper" twelve-gauge shotgun. (Doc. 16; Doc. 47 at 2). Nguyen appeared before the Court for a hearing on his guilty plea, and, prior to accepting his plea, Judge Granade conducted a full and sufficient plea colloquy with Petitioner as required by Federal Rule of Criminal Procedure 11. (Doc. 47 at 2).

Before the plea colloquy, Nguyen was placed under oath and warned of the possibility of a perjury charge if he answered any of the Court's questions falsely during the proceedings. (Id. at 2-3). Nguyen stated that he was thirty-three years old and had completed the twelfth grade. (Id. at 3). He denied ever being treated for any kind of mental illness or addiction to narcotic drugs of any kind and stated that he was not "under the influence of any drug, medication, or alcoholic beverage." (Id.). Of particular significance to Petitioner's claim is the following exchange between Judge Granade and Petitioner:

> THE COURT: Have you received a copy of the indictment; that is, the written charges in your case?
>
> THE DEFENDANT: Well, my lawyer did. I didn't want it to go back through.
>
> THE COURT: All right. But you've seen it?

8

THE DEFENDANT: Yes.

THE COURT: And you've been over it with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Have you fully discussed the case and the charges with Mr. Knizley?

THE DEFENDANT: Yes.

THE COURT: Do you understand the charges that are pending against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in this case by Mr. Knizley?

THE DEFENDANT: Yes.

THE COURT: Is there a plea agreement on these counts?

MR. KNIZLEY: No, ma'am.

THE COURT: Has anyone made any promises or assurances to you of any kind in an effort to induce you to plead guilty to count two?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone attempted in any way to force you to plead guilty to this charge?

THE DEFENDANT: No, ma'am.

THE COURT: Are you pleading guilty of this charge of your own free will because you are guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that the offense to which you are pleading is a felony offense and that if you are convicted, or if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right

to possess any kind of firearm?  And are you a citizen of the United States?

THE DEFENDANT: No, ma'am.

THE COURT: No? It could also entail possible deportation as well.  Do you understand those possible consequences of your guilty plea?

THE DEFENDANT: Yes, ma'am.

THE COURT: The maximum possible penalty provided by law upon conviction of this offense is up to 10 years in prison, a fine of up to $250,000, a term of supervised release of three years, which would follow any term of imprisonment and if you violated the conditions of supervised release you could be imprisoned for that entire term as well, and a special assessment of $100.   Do you understand those possible consequences of your guilty plea?

THE DEFENDANT: Yes, ma'am.

THE COURT: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case.   Have you and Mr. Knizley talked about how the sentencing guidelines might affect your sentence upon conviction of count two?

THE DEFENDANT: No.

THE COURT: Have you talked about the guidelines?

MR. KNIZLEY: Yes, ma'am.

THE COURT: Do you recall going to a probation office conference?

MR. KNIZLEY: Actually the probation office conference in this case was not very helpful in that particular area.  But as late as yesterday we were looking at the guidelines in connection with this case.  You may want to ask this question again.  He may not have understood it, Judge.

THE COURT: I'm talking about the guideline calculations on the possible sentence in this case.

THE DEFENDANT: Oh, okay. Yeah, he did show me the book. Yes, ma'am.

THE COURT: All right. Okay. Do you understand that the Court will not be able to determine the sentencing guideline range for your case until after a presentence report has been completed and you and the government have had the opportunity to challenge the reported facts and recommendation by the probation office, and that the sentence or the guideline calculation determined by the Court may be different from any estimate your attorney or anybody else may have given you in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Do you understand that after your guideline range has been determined, the guidelines themselves further provide for departures either upwards or downwards from that range in certain circumstances?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand that although the Court is required to consider the guidelines in determining the sentence, the guidelines are advisory and do not necessarily control the sentence imposed?

THE DEFENDANT: Yes.

THE COURT: Do you understand that?

THE DEFENDANT: (Nodding head affirmatively).

. . .

THE COURT: Do you further understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea and that you would then have the right to a trial by jury, that at that trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt, that you would have the right to the assistance of counsel for defense, the right to see and hear all of the witnesses and have

them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do understand that if you went to trial on count two and decided not to testify or to put on any evidence at all, those facts could not be used against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you further understand that by entering a plea of guilty to count two, if that plea is accepted, there will be no trial on that count and you will have waived or given up your right to a trial on that charge as well as the other rights I've just described to you?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Now you are pleading guilty to a charge of violating Title 26, United States Code, Section 5861(d), and in order to convict you of that offense the United States would have to prove that you knowingly possessed the firearm described in the indictment; that is, a Street Sweeper 12-gauge shotgun with the serial number set forth in the indictment, that had a barrel bore of more than one half inch and that is not particularly suitable for sporting purposes, and that it had not been registered to you in the National Firearms Registration and Transfer Record as required by law, and that the firearm is one that would be required to be registered and that you had knowledge of the characteristics of the firearm which would require it to be registered. Do you understand what the government would have to prove in order to convict you of this offense?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Now I'm going to ask the government to state the evidence that it would expect to show concerning your possession and

nonregistration of that firearm and I want you to
listen because I'm going to ask you if you agree that
the government could prove what Ms. Bedwell says.

MS. BEDWELL: Your Honor, on or about December the
20th of 2005 a search warrant was executed at the
defendant's residence, and among the firearms
recovered was a Street Sweeper shotgun described in
the indictment, displaying the characteristics which
were described in the indictment, and that weapon
was seized by the Bureau of Alcohol, Tobacco, and
Firearms and Explosives, it was sent to their
laboratory where the characteristics that were
apparent by the firearm were again examined by their
scientists there, and a check was conducted of the
National Firearms Registry and the weapon was not
registered to the defendant.

THE COURT: And it was apparent from looking at the
firearm that it had the characteristics --

MS. BEDWELL: Yes, ma'am.

THE COURT:  -- that require it to be registered?
All right.  Do you agree that the government could
prove what Ms. Bedwell just stated?

THE DEFENDANT: Yes, ma'am.

THE COURT: I'll now ask you: How do you plead to the
charge, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right.  It is the finding of the Court
in the case of United States versus Quang Van Nyuyen
(sic) that the defendant is fully competent and
capable of entering an informed plea, that the
defendant is aware of the nature of the charges and
the consequences of the plea and that the plea of
guilty to count two is a knowing and voluntary plea
supported by an independent basis in fact containing
each of the essential elements of the offense.  The
plea is therefore accepted and the defendant is now
adjudged guilty of that offense.

(Doc. 47 at 3-10).

    "There is a strong presumption that the statements made during

the [guilty plea] colloquy are true." <u>United States v. Medlock</u>, 12 F. 3d 185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." <u>United States v. Rogers</u>, 848 F. 2d 166, 168 (11th Cir. 1988). Moreover, a defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).

As discussed above, Nguyen's contention that his guilty plea is "invalid," *i.e.*, not knowing or voluntary, because of the following instances of ineffective assistance of counsel: (1) trial counsel erroneously advised him that, if he pled guilty to Count Two, evidence of the firearms seized from his residence would not be admissible at his trial on Count One, the drug conspiracy charge;[7] (2) trial counsel promised him that he would only receive a sentence between twelve and twenty-four months on the firearms charge; and (3) trial counsel failed to inform him that, by pleading guilty to Count Two, he was waiving his right to contest the illegal seizure of the "street sweeper" twelve-gauge shotgun. (Doc. 70, att. 1 at 17-18). The Court disagrees.

---

[7] Although Nguyen uses terms such as "tricked" and "deception" when describing trial counsel's alleged incorrect assessment of these factors (Doc. 70, att. 1 at 17-18), there is no evidence whatsoever of fraud or bad faith on the part of trial counsel.

In _Strickland v. Washington_, 466 U.S. 668 (1984), the Supreme
Court held that criminal defendants have a Sixth Amendment right
to "reasonably effective" legal assistance.  _Id._ at 687.  The court
announced the now-familiar test: a defendant claiming ineffective
assistance of counsel must show (1) "that counsel's representation
fell below an objective standard of reasonableness," _id._ at 688,
and (2) that counsel's deficient performance prejudiced the
defendant.  _Id._ at 687.  The Eleventh Circuit has explained that:

> The _Strickland_ test applies to challenges of guilty
> pleas, as well as to convictions by jury.  _Hill v._
> _Lockhart_, 474 U.S. 52, 106 S. Ct. 366, 370, 88 L.
> Ed. 2d 203 (1985).  In this context, the first prong
> of _Strickland_ requires the defendant to show his plea
> was not voluntary because he received advice from
> counsel that was not within the range of competence
> demanded of attorneys in criminal cases.  _See id._
> at 369-70.  The second prong "focuses on whether
> counsel's constitutionally ineffective performance
> affected the outcome of the plea process," meaning
> the defendant must show "a reasonable probability
> that, but for counsel's errors," he would have entered
> a different plea.  _Id._ at 370 (stating the test in
> the context of an accepted guilty plea); _see also_
> _Diaz v. United States_, 930 F.2d 832, 835 (11th Cir.
> 1991) (applying the test to a rejected plea
> agreement).

_Scott v. U.S._, 325 Fed. Appx. 822, 824 (11th Cir. 2009) (unpublished).[8]

Additionally, the law is clear that:

> Judicial scrutiny of counsel's performance must
> be highly deferential.  It is all too tempting
> for a defendant to second-guess counsel's
> assistance after conviction or adverse

---

[8] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are
not considered binding precedent, but may be cited as persuasive
authority."  _Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC_,
253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

> sentence, and it is all too easy for a court,
> examining counsel's defense after it has proved
> unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable. Cf.
> Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.
> Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982).
> A fair assessment of attorney performance
> requires that every effort be made to eliminate
> the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time.
> Because of the difficulties inherent in making
> the evaluation, a court must indulge a strong
> presumption that counsel's conduct falls within
> the wide range of reasonable professional
> assistance; that is, the defendant must overcome
> the presumption that, under the circumstances,
> the challenged action "might be considered sound
> trial strategy." See Michel v. Louisiana,
> supra, 350 U.S., at 101, 76 S. Ct., at 164.
> There are countless ways to provide effective
> assistance in any given case. Even the best
> criminal defense attorneys would not defend a
> particular client in the same way.

Strickland, 466 U.S. at 689. The record in this action fails to

support Nguyen's claim that counsel's advice was deficient, or that,

if deficient, Nguyen was prejudiced thereby.

As set forth above, the record of the guilty plea hearing shows

that Judge Granade questioned Nguyen pointedly about his discussions

with his attorney and his understanding of the indictment and the

charges against him, and he acknowledged that he fully discussed

his case and the charges with his attorney, that he understood the

charges, and that he was satisfied with the representation and advice

given by his counsel. (Doc. 47 at 3-5). In addition to Nguyen's

discussions with his counsel, Judge Granade informed him of the

essential nature of the firearms charge to which he was pleading

guilty,[9] the consequences of a guilty plea, and the fact that he faced a maximum possible penalty of ten years on that charge. (Doc. 47 at 4-10). Judge Granade also cautioned Nguyen that his sentence would be determined by the Court and that it could be different from any estimate his attorney might have given him. (Id. at 6). Judge Granade also informed Nguyen that if he pled guilty, he was waiving his right to a trial on the firearms charge. (Id. at 8-9). Nguyen stated that he understood each of these conditions and affirmed that no one had forced him to plead guilty, nor had anyone induced him to plead guilty with promises or assurances of any kind but that he was pleading guilty because he was guilty. (Id. at 4, 6-8).

Assuming, *arguendo*, that trial counsel incorrectly assessed the admissibility of the firearms evidence in the subsequent drug conspiracy trial, incorrectly predicted the sentence that Petitioner

---

[9] Nguyen also argues that his attorney was ineffective for advising him to plead guilty to Count Two given that he had no knowledge that the shotgun was required to be registered, which Nguyen asserts is an element of possession of an unregistered firearm in violation of 26 U.S.C. § 5861. (Doc. 70, att. 1 at 6, 18). However, as Judge Granade explained to Nguyen at the hearing (Doc. 47 at 8-9), all that was required was that he have knowledge of the *characteristics* of the firearm which would require it to be registered. See U.S. v. Miller, 255 F.3d 1282, 1286-87. ("[T]he government must prove beyond a reasonable doubt that the defendant knew that the weapon he possessed had the characteristics that brought it within the statutory definition of a firearm. . . . [I]t is not necessary for the Government to prove that the Defendant knew that the firearm he possessed was not registered to him with the National Firearms Registration and Transfer Records, nor is it necessary for the Government to prove that the Defendant knew that the law required him to register the firearm."). Nguyen admitted to the Court that it was apparent from looking at the gun that it had the characteristics that brought it within the statute. (Doc. 47 at 9-10). Thus, this argument is unavailing.

would likely receive if he pled guilty, and failed to inform Nguyen
that he would no longer be able to contest the alleged illegal seizure
of the shotgun involved in Count Two once he pled guilty to that
charge, Nguyen still has failed to establish that the advice to plead
guilty to the firearms charge "fell below an objective standard of
reasonableness." Strickland, 466 U.S. at 688. As observed by
the Supreme Court in Tollett v. Henderson, 411 U.S. 258, 267-68
(1973):

> The principal value of counsel to the accused in
> a criminal prosecution often does not lie in
> counsel's ability to recite a list of possible defenses
> in the abstract, nor in his ability, if time permitted,
> to amass a large quantum of factual data and inform the
> defendant of it. Counsel's concern is the faithful
> representation of the interest of his client and such
> representation frequently involves highly practical
> considerations as well as specialized knowledge of the
> law. Often the interests of the accused are not advanced
> by challenges that would only delay the inevitable date
> of prosecution, see Brady v. United States, supra, 397
> U.S. at 751-752, 90 S. Ct. at 1470-1471, or by contesting
> all guilt, see Santobello v. New York, 404 U.S. 257, 92
> S. Ct. 495, 30 L. Ed. 2d 427 (1971). A prospect of plea
> bargaining, the expectation or hope of a lesser sentence,
> or the convincing nature of the evidence against the
> accused are considerations that might well suggest the
> advisability of a guilty plea . . . .

Id.

At the time Nguyen pled guilty to the firearms charge on January
18, 2007, the uncontradicted evidence showed that the police had
seized an unregistered, "street sweeper" twelve-gauge shotgun, with
a barrel bore of more than one half inch, from the home that Nguyen
shared with his wife and children. (Doc. 27 at 4-7; Doc. 47 at 9-10).
Under the circumstances, even if trial counsel's assessment of the

factors set forth above was mistaken or lacking, there was still
ample motivation to plead guilty to Count Two, if only to avoid having
the jury focus and deliberate unnecessarily on the "street sweeper"
shotgun, which was a prejudicial piece of evidence. Even assuming
mistakes in counsel's assessment of the factors discussed above,
Nguyen has failed to show that counsel's overall performance related
to his advice to plead guilty fell below an objective standard of
reasonableness. See Johnson v. U.S., 2009 WL 995472, *6 (M.D. Fla.
2009) (unpublished) ("[C]onsidering the nature of the charges and
the evidence available to the government, Petitioner's attorney's
advice that he plead guilty rather than go to trial did not fall
below an objective standard of reasonableness. . . . That the
attorney's prediction turned out to be mistaken, and his estimate
of the sentencing guidelines erroneous, does not constitute
ineffective assistance of counsel in and of itself and does not
undermine the knowing and voluntary nature of Petitioner's guilty
pleas.").

Moreover, Nguyen has failed to show "a reasonable probability
that, but for counsel's errors," he would have entered a different
plea. Scott, 325 Fed. Appx. at 824 (citations and internal quotation
marks omitted). Although Nguyen argues that his attorney
incorrectly predicted that his sentence would be twelve to
twenty-four months on Count Two, Judge Granade made it abundantly
clear to Nguyen before he pled guilty that he faced the real
possibility of being sentenced to ten years in prison if he pled

guilty to the firearms charge, despite any estimate that his attorney or anyone else had given him.  (Doc. 47 at 5-6).  Nguyen stated that he understood and he pled guilty.  (Id. at 10).  Although he now claims that he would not have pled guilty to Count Two had he known that the Court would sentence him to the maximum sentence of ten years, that is simply a case of buyer's remorse, which is not a proper basis for habeas relief.  See Langford v. U.S., 2009 WL 6467043, *9 (S.D. Ala. 2009) ("Mere disappointment that a court imposed a harsher sentence tha[n] what one hoped for is not the proper basis for a motion to vacate."); Johnson, 2009 WL 995472, *5 (M.D. Fla. 2009) (unpublished) ("Petitioner may not now disavow his express representations made under oath under the guise of an ineffective assistance claim, merely because he did not receive a sentence that he hoped for.  Disappointed expectations do not equate to an involuntary and unknowing guilty plea or, for that matter, a bona fide claim of ineffective assistance, considering Petitioner's thorough and comprehensive plea colloquy.").

Similarly, with respect to counsel's alleged inaccurate assessment of the admissibility of the firearms evidence in the drug conspiracy trial and failure to inform Nguyen that he would be waiving his right to challenge the seizure of the "street sweeper" shotgun if he pled guilty to Count Two, there is no indication that an accurate assessment of those factors would have motivated Petitioner to enter a different plea.  From Nguyen's standpoint, a plea of "not guilty" to Count Two certainly would not have had a favorable impact on the

admissibility of the firearms, nor is there any indication that Nguyen would have chosen to go to trial on Count Two simply to preserve his challenge to the seizure of the "street sweeper" shotgun. The decision whether to plead guilty to Count Two or to go to trial on Count Two was a judgment call with valid considerations weighing for and against both options. Nguyen has failed to show that, had he known that the firearms would still be admissible in the drug conspiracy trial and that he would not be able to challenge the seizure of the "street sweeper" shotgun, he would not have pleaded guilty to the firearms charge. Thus, Nguyen cannot show that he was prejudiced by his counsel's advice to plead guilty to Count Two.

In light of the foregoing, the Court finds that Nguyen was fully informed at the guilty plea hearing of the nature of the charges against him and the direct consequences of a guilty plea to the firearms charge and that he voluntarily and knowingly pled guilty to that charge. The fact that Nguyen's counsel, and thus Nguyen, "did not correctly assess every relevant factor entering into his decision" does not warrant the grant of habeas relief. Bousley, 523 U.S. at 619. Accordingly, Claim Four of Nguyen's habeas petition is due to be denied.

B. Claim One: Ineffective Assistance of Trial Counsel for Failing to Contest the Search Warrant and Seizure of Evidence on the Ground of Insufficient Probable Cause.

Nguyen argues in Claim One of his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 that his trial counsel was ineffective for failing to contest the search warrant in this

case on the ground of lack of probable cause. (Doc. 70, att. 1 at 10). Specifically, Nguyen asserts that firearms, surveillance equipment, and Xanax pills were illegally seized from his residence on December 20, 2005, pursuant to a faulty search warrant. (Id. at 12-14). Nguyen argues that because the Government has been unable to produce the original affidavit of probable cause that accompanied the search warrant, there must not have been an affidavit attached to the search warrant, and, therefore, his trial counsel was ineffective for failing to challenge the seizure of evidence on that basis.[10] (Id. at 4, 10-11).

The Government counters that any challenge to the search warrant or seizure of evidence with respect to Count Two was waived by Nguyen's guilty plea to that charge. Further, even if not waived, the evidence shows that there was an affidavit attached to the search warrant that established probable cause; thus, any challenge to the search warrant or seizure of evidence on that basis would have been futile. (Doc. 72 at 15). Therefore, Nguyen's claim that his trial counsel was ineffective for failing to challenge the search warrant on that basis is likewise without merit.

With respect to the waiver issue, "'[a] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the

---

[10] Nguyen states: "It is presumed that there was [no] probable cause ever submitted to support the warrant because no affidavit or comparable documentation was attached to the warrant or ever referenced to in the record." (Doc. 70, att. 1 at 4) (brackets in original).

defendant.'" <u>Washington v. U.S.</u>, 2010 WL 3338867, *15 (S.D. Ala. 2010) (quoting <u>United States v. Glinsey</u>, 209 F.3d 386, 392 (5th Cir. 2000)). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." <u>Id.</u> (quoting <u>Glinsey</u>, 209 F.3d at 392). <u>See also</u> <u>Franklin v. U.S.</u>, 589 F.2d 192, 194-95 (5th Cir. 1979)[11] ("By entering a knowing, voluntary, intelligent guilty plea on the advice of competent counsel, [Petitioner] has waived all nonjurisdictional complaints. . . [such as] claims regarding Miranda warnings, coerced confessions, perjury and illegal searches and seizures . . . ."). Thus, Nguyen's claim of ineffective assistance of counsel for failing to challenge the search warrant and seizure of evidence on the basis of lack of probable cause is waived as it relates to Count Two, the firearms charge.

Moreover, the Court agrees with the Government that, even if not waived, habeas Claim One is without merit. As discussed above, Nguyen bases his challenge to the search warrant on a lack of probable cause due to the Government's inability to produce the original affidavit that was attached to the search warrant when it was issued. (Doc. 70, att. 1 at 10-13). The Government responds that there was an affidavit attached to the search warrant when the application was presented to the state court judge; however, the original has

---

[11] <u>See</u> <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

been lost or destroyed. (Doc. 72 at 16).

At Nguyen's trial, Corporal Joe Wolfe of the Mobile Police Department testified that, in the summer of 2003, he was assigned to a drug task force and began working with the Drug Enforcement Administration (DEA) on a large narcotics investigation. (Doc. 48 at 199-204). Corporal Wolfe testified that, shortly after joining the task force, he took over as case agent, and, in November, 2004, began to focus on Petitioner as a target of the investigation. (Id.).

In December, 2005, Corporal Wolfe prepared a search warrant for Nguyen's residence along with an affidavit explaining the basis for his request to search the property, and he presented the search warrant and the affidavit to the judge. (Id. at 203-04). When shown a copy of the search warrant at trial, Corporal Wolfe noted that the affidavit was not attached to that copy. He testified, however, that the judge had reviewed both the warrant and the affidavit, and, after doing so, had found probable cause and issued the warrant on that basis. (Id. at 203-04, 225).

In addition to Corporal Wolfe's trial testimony, the Government has submitted an "unsigned draft" of the original affidavit which it maintains was attached to the search warrant at issue. (Doc. 72 at 16-17; Doc. 72 att. 1). The draft affidavit reveals that it was prepared by Corporal Wolfe and describes the undercover narcotics task force investigation with which he was associated. (Doc. 72, att. 1 at 1-2). Corporal Wolfe states in the draft affidavit that the task force initiated its undercover operation into the

distribution of MDMA ("ecstasy") in September, 2003, in Mobile and Baldwin Counties, which led to an investigation into individuals also distributing methamphetamine "ice". (Id.). The draft affidavit outlines the arrests of several individuals for federal drug violations who agreed to cooperate with the police and who told the police that they had purchased "ice" from Nguyen. (Id. at 2-4).

Two of the individuals stated that they had purchased "ice" from Nguyen at his residence, and one of the individuals described guns and a camera surveillance system in place at Nguyen's residence. (Id. at 2-4). The draft affidavit also details a conversation between Nguyen and Captain Wilson of the Bayou La Batre Police Department on October 31, 2005, during which Nguyen requested police assistance in dealing with another drug dealer, "Ham," who was allegedly accusing Nguyen of stealing drugs and money from him. (Id. at 4). The affidavit states that Nguyen admitted to Captain Wilson during the conversation that he had arranged meetings at his home for Ham to sell drugs to other people, and, in return, he had received money or drugs for setting up the meeting. (Id.).

The information contained in the draft affidavit is consistent with the trial testimony of Captain Wilson, Corporal Wolfe, and the police informants, as well as portions of the testimony of Nguyen's wife and Nguyen himself. (Doc. 48 at 28, 32-35, 67-68, 72-75, 98-102, 123-29, 155-58, 199-222, 243, 254-55, 270-76; Doc. 49 at 10-26). It is also consistent with the search warrant. (Doc. 70, att. 1 at 33). In circumstances such as these where the purported original

affidavit supporting a search warrant is missing, "other evidence may be presented to establish the fact that an affidavit was presented, as well as its contents." See U.S. v. Lambert, 887 F.2d 1568, 1571-72 (11th Cir. 1989) (contents of the missing affidavit were easily established by duplicates of the affidavit); see also U.S. v. Pratt, 438 F.3d 1264, 1270 (11th Cir. 2006) (in the case of a missing search warrant, "any other relevant evidence" may be used to prove the search warrant's existence or contents); U.S. v. Lazar, 604 F.3d 230, 235 n.3 (6th Cir. 2010) ("[A] court may consider a duplicate [of a missing affidavit], even one that contains later-added material, when determining whether a search warrant lawfully issued") (citing U.S. v. Posey, 501 F.2d 998, 1002 (6th Cir. 1974)); U.S. v. Gibbs, 421 F.3d 352, 359 (5th Cir. 2005) (where a search warrant affidavit is missing, "other evidence may be admitted to prove the affidavit's contents. . . . Here, such other-evidence is the testimony of the original affiant-Agent Bailey-and the reconstructed affidavit.").

Nguyen does not dispute that the draft affidavit submitted by the Government would have provided sufficient probable cause for issuance of the warrant. Rather, he questions the veracity of the Government's explanation for the missing affidavit[12] and theorizes that there never was an affidavit attached to the search warrant

---

[12] The Government states that the original affidavit has been lost or destroyed and that the United States Attorney's Office does not have a copy because the files have been purged during the normal course of business. (Doc. 72 at 16).

and that Captain Wilson, Corporal Wolfe, and the judge acted in bad faith to obtain a sham warrant without probable cause. (Doc. 70, att. 1 at 10-14; Doc. 73 at 4-6). There is no evidence to support Nguyen's theory. On the other hand, the draft affidavit, along with the trial testimony of Corporal Wolfe, supports the Government's position that an affidavit was attached to the search warrant when it was presented to the judge and that the search warrant established probable cause for issuance of the warrant by the judge.[13] See Lambert, 887 F.2d at 1571-72 ("[T]he absence from the court records of an affidavit constitutes some evidence that one did not exist and, depending on the circumstances, may preclude a determination that the warrant was issued on probable cause. However, other evidence may be presented to establish the fact that an affidavit was presented, as well as its contents."); U.S. v. Askew, 2010 WL 1409657, *9 (W.D. Pa. 2010) (where original supporting affidavits and search warrants were missing, docket entries and uncontradicted testimony from the Special Agent at trial established that the search warrants were presented to the judge who determined that there was probable cause for the search and seizure of evidence and issued the warrants).

Because credible evidence supports the conclusion that a supporting affidavit was presented to the state court judge and

---

[13] Indeed, the trial testimony of Corporal Wolfe alone establishes these facts.

provided probable cause for issuance of the search warrant for Nguyen's residence, counsel was not ineffective for failing to challenge the search warrant on this basis. Accordingly, habeas Claim One is due to be denied.

C. Claim Two: Ineffective Assistance of Trial Counsel for Failing to Contest the Search Warrant on the Ground that the Executing Agency did not have Jurisdiction to Administer the Warrant at that Location.

Nguyen argues that his trial counsel was ineffective for failing to contest the search warrant and seizure of evidence on the ground that the City of Bayou La Batre Police Department did not have jurisdiction to execute a warrant at Petitioner's residence in Irvington, Alabama (Claim Two). (Doc. 70, att. 1 at 14). As discussed above in relation to habeas Claim One, any challenge to the search warrant with respect to Count Two, the firearms charge, was waived by Petitioner's guilty plea to that charge. This includes Petitioner's claim of ineffective assistance of counsel for failing to challenge the search warrant with respect to Count Two.

Moreover, even if not waived, habeas Claim Two is without merit with respect to both Counts One and Two. At Nguyen's trial on the drug conspiracy charge, Captain Darryl Wilson of the Bayou La Batre Police Department testified that he was present when the search warrant was executed at Nguyen's residence in "Irvington, Alabama," which he described as "a tad bit north" of Bayou La Batre, Alabama, but still "in the Bayou La Batre police area."[14] (Doc. 48 at 27,

---

[14] In addition, Corporal Wolfe of the Mobile Police Department

32, 39). Captain Wilson's testimony regarding the jurisdiction of the Bayou La Batre Police Department is consistent with Nguyen's testimony that he called the Bayou La Batre Police Department for help when another drug dealer, "Ham," who also lived in Irvington, Alabama, threatened to harm him over stolen drugs and money, and Captain Wilson responded to that call. (Id. at 32-37, 274-75). Based on the foregoing, Nguyen has failed to show that there was any reasonable basis for counsel to object to the search warrant on the ground that the Bayou La Batre Police Department lacked authority to administer the search warrant at Nguyen's home. Therefore, counsel was not ineffective in this regard; thus, habeas Claim Two is without merit.[15]

D. Claim Three: Ineffective Assistance of Trial Counsel for Failing to Contest the Seizure of Firearms and Surveillance Equipment on the Ground that they were Outside the Scope of the Search Warrant.

Nguyen argues that his trial counsel was ineffective for failing

---

testified that he, along with "Captain Wilson and several others, either DEA agents or Bayou La Batre police officers" executed the warrant on Petitioner's residence. (Doc. 48 at 204).

[15] Nguyen also argues that the search warrant violates Federal Rule of Criminal Procedure 41 because it was signed by a state court judge. (Doc. 74 at 2). The record shows that the warrant was a state warrant, requested by a state law enforcement officer, and issued by a state court judge. (Doc. 70, att. 1 at 33; Doc. 48 at 199, 203-04). Assuming, without deciding, that Rule 41 applies to this warrant, see U.S. v. Lehder-Rivas, 955 F.2d 1510, 1522 (11th Cir. 1992) ("A state search warrant must comply with federal standards if the search was 'federal in execution.' . . . A search is federal in execution if a federal official 'had a hand in it.'") (citations omitted), Rule 41(b) authorizes federal law enforcement officers to obtain search warrants from a judge of a state court of record. Thus, this argument is without merit.

to file a motion to suppress evidence of the firearms and surveillance equipment that were seized from his residence on the basis that they were not specifically described in the warrant (Claim Three). (Doc. 70, att. 1 at 15-17). As discussed above, any challenge to the search warrant with respect to Count Two, the firearms charge, has been waived by Petitioner's guilty plea to that charge. This includes Nguyen's claim of ineffective assistance of counsel for failing to move to suppress evidence with respect to Count Two.

Moreover, even if not waived, habeas Claim Three is without merit with respect to both Counts One and Two. "The Fourth Amendment to the United States Constitution mandates that search warrants 'particularly describ[e] the place to be searched, and the persons or things to be seized.'" U.S. v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007). "The point of the Fourth Amendment's particularity requirement is to protect individuals from being subjected to general, exploratory searches." Id. (citing Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).

The search warrant at issue in this case described the property to be searched and the items to be seized as follows:

> DOCUMENTS, WIRE TRANSFERS, U.S. CURRENCY,
> COMPUTER DISKS, COMPUTER HARD DRIVES, VIDEO
> TAPES, PHONE NUMBERS, LEDGERS, PHOTOGRAPHS,
> PARAPHERNALIA, AND ALL PAPERWORK RELATING TO
> THE TRANSPORTATION, MANUFACTURE, OR PROFIT
> GAINED IN RELATION TO THE POSSESSION,
> MANUFACTURE, USE, TRANSPORTATION, OR
> DISTRIBUTION OF ILLEGAL DRUGS AND ANY OTHER
> ILLEGAL CONTRABAND.

(Doc. 70, att. 1 at 33).

Although Nguyen is correct that the warrant did not specifically authorize the seizure of weapons or surveillance equipment from his residence, the police properly seized those items as "tools of the [drug] trade." U.S. v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990) (citations omitted) ("The firearms were not improperly seized, though not named in the warrant. They are 'tools of the trade.'. . . The firearms were found in sleeping areas where officers had a right to be pursuant to a valid warrant and they were plainly visible. There was probable cause to believe the items were evidence or contraband.").

> In United States v. Lippner, 676 F.2d 456 (11th Cir. 1982), this court held that weapons found on a defendant's person or property were admissible into evidence in a trial for a drug conspiracy. Id. at 463. The court reasoned that a gun and brass knuckles were "tools for the execution of the crime" of drug trafficking, and were probative of the defendant's intent and his knowledge that he was engaged in an illicit transaction. Id. Similarly, in United States v. Perez, 648 F.2d 219 (5th Cir.), cert. denied, 454 U.S. 1055, 102 S. Ct. 602, 70 L. Ed. 2d 592 (1981), the court upheld the introduction into evidence of loaded guns discovered in a house into which the defendants were unloading marijuana at the time of their arrest. 648 F.2d at 224. The Perez court endorsed the following observation:
>
>> Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment, and other narcotic

equipment.

U.S. v. Montes-Cardenas, 746 F.2d 771, 776-77 (11th Cir. 1984)

(collecting cases).

In this action, the police found weapons scattered throughout Nguyen's residence when they executed the search warrant on December 20, 2005. (Doc. 70, att. 1 at 34-35, 40). Many of the weapons were plainly visible and loaded; several were positioned against doorways, ready to fire. (Doc. 48 at 42, 209-217). Therefore, although not specifically named in the search warrant, officers properly seized these weapons as evidence of Nguyen's involvement in drug trafficking. See Montes-Cardenas, 746 F.2d at 776-77.

The same reasoning applies to the surveillance equipment seized by the police. The record shows that Nguyen had a surveillance camera affixed to the top of his house trailer, which he routed to a computer monitor and hard drive inside his residence and recorded the premises continuously. (Doc. 48 at 28, 52; Doc. 49 at 25). Just as loaded firearms are tools of the drug trade, so too is surveillance equipment. See U.S. v. Honken, 378 F. Supp. 2d 970, 1004 (N.D. Iowa 2004) ("firearms, silencers, and surveillance equipment . . . are tools of the drug trade").

Because the seizure of the firearms and surveillance equipment at Nguyen's residence did not exceed the scope of the search warrant, counsel could not be ineffective for failing to file a motion to

suppress evidence of those items on that basis.[16] Therefore, Nguyen's habeas Claim Three is without merit.

E. Claims Five and Seven: Ineffective Assistance of Trial Counsel at Sentencing for Failing to Oppose the Drug Type and Quantity Set Forth in the Presentence Investigation Report (Claim Five) and Ineffective Assistance of Appellate Counsel for Failing to Raise Drug Type and Quantity on Direct Appeal (Claim Seven).

Nguyen argues that his trial counsel was ineffective for failing to oppose the drug type and quantity set forth in the PSI (Claim Five) and that his appellate counsel was ineffective for failing to challenge the drug type and quantity on direct appeal (Claim Seven). (Doc. 70, att. 1 at 20, 30). Specifically, Nguyen states that trial counsel was ineffective for failing to oppose the drug type established in the PSI and relied upon at sentencing because there was no lab testing provided to prove the drug's purity and for failing to oppose the drug quantity which "was off by at least 600 grams." (Id. at 20). Nguyen argues that his appellate counsel was likewise ineffective for failing to raise these issues on direct appeal. (Id. at 30). The Court disagrees.

First, with respect to drug type, Nguyen's essentially argues that his sentence should not have been based on "the more aggravated drug type," "meth ice," but, rather, should have been based on "meth regular," because no scientific analysis was ever performed to

---

[16] Having found that the seizure of firearms did not exceed the scope of the search warrant, Nguyen's argument that counsel should have challenged the forfeiture of the street sweeper shotgun on this basis is also without merit.

determine the purity of the substance.[17]  (Doc. 70, att. 1 at 20-21).

Nguyen's argument is without merit. While it is true that no

methamphetamine was recovered from Nguyen, the law is clear that

in a prosecution for conspiracy to possess methamphetamine with

intent to distribute, the government is not required to introduce

into evidence "the methamphetamine that was sold nor any physical

evidence, because in a conspiracy case, the essence of the crime

is the illegal agreement." [18] U.S. v. Villavicencio, 287 Fed. Appx.

820, 823 (11th Cir. 2008) (unpublished).  The Eleventh Circuit has

explained that:

> Identification of a controlled substance does
> not require direct evidence if available
> circumstantial evidence establishes its
> identity beyond a reasonable doubt.  Such
> evidence can include lay experience based on
> familiarity through prior use, trading, or law
> enforcement; a high sales price; on-the-scene

---

[17] Under the Guidelines, "methamphetamine (actual)" , which
refers to pure or uncut methamphetamine, and "ice", which refers
to a mixture or substance containing d-methamphetamine hydrochloride
of at least 80% purity, are treated more harshly than
"methamphetamine", which refers to a substance containing
d-methamphetamine.  See Reece v. United States, 119 F. 3d 1462, 1470
n. 17 (11th Cir. 1997); United States v. Carroll, 6 F.3d 735 735,
744, 748 (11th Cir. 1993)("[t]he mixture to purity ratio at each
level of the Drug Quantity Table is ten to one; therefore, it takes
one-tenth the quantity of pure methamphetamine to yield the same
offense level as a mixture or substance containing
methamphetamine."); U.S.S.G. § 2D1.1(c).

[18] Nguyen was convicted of a "dry" conspiracy, which is a conspiracy
in which the only evidence of the illegal drug activity is the
testimony of others who recount, historically, such activities."
U.S. v. Pressley, 473 F. Supp. 2d 1303, 1314 (N.D. Ga. 2006)("[i]n
such cases, the Government will have seized no drugs and will often
have no evidence other than the testimony of its witnesses concerning
the defendant's past drug activities.")

> remarks by a conspirator identifying the
> substance as a drug; and behavior characteristic
> of sales and use such as testing, weighing,
> cutting and peculiar ingestion.  United States
> v. Sanchez, 722 F.2d 1501, 1506 (11th Cir. 1984);
> United States v. Crisp, 563 F.2d 1242, 1244 (5th
> Cir. 1977); United States v. Quesada, 512 F.2d
> 1043, 1045 (5th Cir.), cert. denied, 423 U.S.
> 946, 96 S. Ct. 356, 46 L. Ed. 2d 277 (1975).
> Identification based on past use coupled with
> present observation of the substance at hand
> will suffice to establish the illicit nature
> of a suspected substance.

U.S. v. Harrell, 737 F.2d 971, 978-79 (11th Cir. 1984).  At

sentencing, "[w]hen no quantity [of methamphetamine] has been

recovered, the government may prove the purity of quantities

attributed to the defendant by circumstantial evidence," including

a conspirator's reliable testimony that the purchased

methamphetamine was pure.  U.S. v. Houston, 338 F.3d 876, 879 (8th

Cir. 2003).  Indeed, in U.S. v. Cockerill, 2000 WL 852608, *82 (4th

Cir. 2000) (unpublished), the Fourth Circuit observed:

> In [appellant's] case, the bulk of the
> methamphetamine used to calculate his offense
> level was not seized and could not be analyzed,
> but there was evidence through [a
> co-conspirator's] testimony that it was of very
> good quality.  The sentencing guidelines do not
> require absolute certainty about the amount of
> drugs or their purity when the drugs are not
> seized or the amount seized does not reflect
> the scale of the offense.  See USSG § 2D1.1,
> comment. (n.12).  In such cases, the district
> court may estimate the quantity, and may use
> whatever reliable evidence is available.  Id.;
> see also USSG § 6A1.3(a) (in resolving disputed
> sentencing factors, district court may consider
> any information with sufficient indicia of
> reliability to support its probable accuracy).

Id.; see also U.S. v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004)

("The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing.").

Although no methamphetamine was seized in Nguyen's case, five of his fellow drug dealers testified at his trial that the substance that Nguyen sold them and/or that they sold to him was "ice." (Doc. 48 at 67-68, 100, 125-26, 161, 176-80). For instance, co-conspirator/co-drug dealer/co-user William Johnson testified that methamphetamine "ice" "looks like rock salt or salt, big chunks of salt." (Doc. 48 at 96). He explained: "[t]here's ice, which is a very strong, powerful substance, and there's regular methamphetamine, which is a powder, completely different looking." (Id.). When asked, "which of the kinds of drugs did you get from the defendant, which form of methamphetamine," Johnson stated, "ice." (Id.). In response to a question, "and I take it you used some of that ice that you got from the defendant," Johnson stated, "yes ma'am." (Id. at 97). Another co-conspirator/drug dealer, Voeruth Meas, testified that he purchased "ice" from Nguyen in "eightball" quantities, which he explained was "3.5" grams of "ice." (Id. at 100). The testimony of Johnson and Meas, which mirrors the testimony of Nguyen's other co-conspirators, reflects their experience with and knowledge of the methamphetamine drug trade and establishes their competence in identifying the drugs in question. Having reviewed the record in its entirety, the Court finds the testimony of these

seasoned drug dealers and users competent, reliable, and sufficient to prove that the form of drug that Nguyen bought from and sold to these individuals was "ice." See Villavicencio, 287 Fed. Appx. 820 *7 (where the testimony of the witnesses involved information reasonably within the potential knowledge of the witnesses, including the existence and amount of drugs involved, such testimony was not incredible as a matter of law.) Given this overwhelming evidence that "ice" was the drug exchanged between Nguyen and his co-conspiratiors, neither Nguyen's trial counsel nor his appellate counsel was ineffective for failing to challenge his sentence based on drug type as any such challenge would have been futile.

Next, with respect to drug quantity, Nguyen argues that the Court miscalculated the amount of methamphetamine with which he was involved and relied on false and unreliable trial testimony to find that he was accountable for 1,371 grams of methamphetamine "ice." (Doc. 70, att. 1 at 23; Doc. 27 at 9). According to Nguyen, the amount should have been "around 700 grams." (Doc. 70, att. 1 at 24).

At Nguyen's trial, the jury found him guilty of conspiracy to possess with intent to distribute methamphetamine in the amount of "500 grams or more of a mixture and substance containing methamphetamine." (Doc. 49 at 71; Doc. 20, att. 1 at 2). Under the sentencing guidelines, quantities of at least 500 grams but less than 1.5 kilograms of methamphetamine "ice" have a base offense level

of 36.[19]  U.S.S.G. § 2D1.1c(2), 18 U.S.C.A.  In sentencing Nguyen,

the Court began with the base offense level of 36 and added a two-level

increase for a firearm and a two-level increase for obstruction of

justice.  This resulted in a total offense level of 40, with a

criminal history category of II.  (Doc. 27 at 10-12; Doc. 50 at 3).

This in turned yielded a guideline range of imprisonment of 324 to

405 months.  (Doc. 27 at 18; Doc. 50 at 3).  The Court sentenced

Nguyen to 364 months on Count One, which was mid-range, and 120 months

on Count Two, to run concurrently.  (Doc. 50 at 10).  Assuming,

without deciding, that Nguyen is correct that his base offense level

and sentence should have been calculated using a drug quantity of

700 grams instead of 1,371 grams, the result is the same since the

guidelines call for a base offense level of 36 for either of those

quantities.  See U.S.S.G. § 2D1.1c(2) (quantities of "at least 500

G but less than 1.5 KG of 'Ice'" have a base offense level of 36).

  Thus, neither Nguyen's trial counsel nor his appellate counsel was

ineffective for failing to challenge his sentence on this basis.

F. Claim Six: Ineffective Assistance of Trial Counsel at Sentencing
   for Failing to Oppose the Two Point Obstruction Enhancement.

    Nguyen argues in Claim Six that his trial counsel was ineffective

at sentencing for failing to oppose the two point obstruction

enhancement under U.S.S.G. § 3C1.1 "on the basis of insufficient

supporting facts."  (Doc. 70, att. 1 at 27-28).  Specifically,

---

[19] As discussed above, Nguyen's argument that the Court should have
calculated his sentence based on "meth regular" instead of "meth ice"
is without merit.  (Doc. 70, att. 1 at 23).

Nguyen refers to the portion of the PSI that provided:

> Adjustment for Obstruction of Justice: According to the government, during the defendant's trial, Nguyen testified falsely concerning material aspects of the offense. The government further contends that the defendant also suborned perjury from his wife. Pursuant to U.S.S.G. § 3C1.1, the offense level is increased by two levels.

(Id. at 27; Doc. 27 at 10). Nguyen argues that the record does not support this enhancement. The Court disagrees.

U.S.S.G., § 3C1.1, 18 U.S.C.A., provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

Application Note 4 to U.S.S.G. § 3C1.1 further provides:

> The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies: . . .

> (b) committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction. . . .

While Nguyen correctly states that at sentencing, his counsel did not object to the two-level enhancement for obstruction of justice[20]; to prevail on his claim of ineffective assistance of counsel however, he must demonstrate that his counsel's performance

_____

[20] (Doc. 50 at 3).

fell below an "objective standard of reasonableness" under "prevailing professional norms" and that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 687-88, 694. Nguyen has not satisfied either prong.

The record shows that Nguyen took the stand at his trial and testified that he never told Captain Wilson of the Bayou La Batre Police Department that he had arranged meetings for Cu Huynh at his house so that Huynh could sell drugs to other people; he denied ever selling or buying drugs at his house; he denied having any relationship with his co-conspirators/co-drug dealers except for playing pool with them at his house and selling one of them a car; and he denied having ever personally used drugs of any kind. (Doc. 48 at 277, 279-83; Doc. 49 at 42, 49). Nguyen's wife likewise testified that she had no knowledge of any drug activity at her home, nor did she have any knowledge of her husband having ever used drugs. (Doc. 48 at 247). Contrary to this testimony, the trial record is replete with evidence that Nguyen and his co-conspirator/drug dealer/customers met regularly at his house to buy and sell "ice" and that they all, including Nguyen, used "ice."[21] (Doc. 48 at 35, 66-73, 99-102, 125-28, 155-61, 176-81). Assuming, *arguendo*, that

---

[21] One such individual, Thipakhan Vannavylaythong ("Tip"), testified that he had been to Nguyen's house "a lot of times" and, when asked how often he had seen Nguyen use "ice," he testified, "every time I see him." (Doc. 48 at 127, 147). Another individual, Ounla Vannavylaythong, was asked, "do you remember how many times you were able to get drugs from the defendant," and he testified in response,

Nguyen did not obstruct the administration of justice by suborning perjury on the part of his wife, his concealment and untruthfulness concerning his own drug activity was indisputably material, independently meriting an obstruction enhancement.

Counsel is not required to make a meritless objection in order to avoid a charge of ineffective representation. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) ("appellate counsel was not ineffective for failing to raise a nonmeritorious issue."); see also Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Because there was sufficient evidence for the two-level enhancement for obstruction, an objection by Nguyen's counsel would have been meritless. Therefore, his counsel did not perform deficiently by failing to object to the adjustment, nor was Nguyen prejudiced by counsel's failure to object. Accordingly, he is not entitled to relief on Claim Six.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings the Undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where

---

"too many times ma'am." (Id. at 156-57).

a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Nguyen's claims would warrant the issuance of a

Certificate of Appealability in this case. For the reasons discussed above with respect to Claims One, Two, and Three, Nguyen's guilty plea on the firearms charge (Count Two) waived each of these ineffective assistance of counsel. In addition, his procedural default of Claim Four precludes habeas relief on that ground. Under the circumstances, a reasonable jurist could not conclude that this Court is in error in invoking these procedural bars with respect to these claims. See Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In addition, reasonable jurists could not debate whether any of Nguyen's claims should be resolved in a different manner or were adequate to deserve encouragement to proceed further on the merits. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

## CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 70) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States

of America, and against Petitioner, Quang Van Nguyen. In addition, the Undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability. It is so recommended.

The instructions which follow the Undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the **22nd** day of **October, 2010**.

/s/ Sonja F. Bivins
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    *Objection*.   Any party who objects to this recommendation or
anything in it must, within fourteen (14) days of the date of service
of this document, file specific written objections with the Clerk
of this court.  Failure to  do so will bar a *de novo* determination
by the district judge of anything in the recommendation and will
bar an attack, on appeal, of the factual findings of the Magistrate
Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736,
738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.
Unit B, 1982) (*en banc*).  The procedure for challenging the findings
and recommendations of the Magistrate Judge is set out in more detail
in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a matter
> excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement
> of Objection to Magistrate Judge's Recommendation' within
> ten days[22] after being served with a copy of the
> recommendation, unless a different time is established
> by order.  The statement of objection shall specify those
> portions of the recommendation to which objection is made
> and the basis for the objection.   The objecting party shall
> submit to the district judge, at the time of filing the
> objection, a brief setting forth the party's arguments that
> the magistrate judge's recommendation should be reviewed
> *de novo* and a different disposition made.   It is
> insufficient to submit only a copy of the original brief
> submitted to the magistrate judge, although a copy of the
> original brief may be submitted or referred to and
> incorporated into the brief in support of the objection.
>  Failure to submit a brief in support of the objection
> may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment can
be appealed.

2.    *Transcript (applicable Where Proceedings Tape Recorded)*.
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate
Judge finds that the tapes and original records in this case are

---

[22] Effective December 1, 2009, the time for filing written
objections was extended to "14 days after being served with a copy
of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.