IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   CRIMINAL NO. 06-0206-CG |
| QUANG VAN NGUYEN, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This case is before the court on remand from the Eleventh Circuit to conduct an evidentiary hearing on Quang Van Nguyen's claim that his counsel rendered ineffective assistance at sentencing by failing to object to classification of the methamphetamine as "ice" pursuant to U.S.S.G. § 2D1.1(c), Note (C).[1]  Upon consideration of the papers submitted, the mandate from the Eleventh Circuit, the arguments of counsel, and evidence admitted, this court concludes that Nguyen has not met his burden on remand, and accordingly, his habeas petition is due to be **DENIED**.

## I.    PROCEDURAL HISTORY

Nguyen was charged with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 (count 1), possession of an unregistered firearm in violation of 18 U.S.C. § 924(d) (count two), and forfeiture (count three).  (Doc. 1)  Nguyen, represented by counsel, pled guilty to count two of the indictment and consented to the forfeiture of the firearm.  After a two-day trial,

---

[1] Note (C) defines "ice" as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity."

the jury found Nguyen guilty of count one, concluding that "500 grams or more of a mixture or substance containing methamphetamine were involved in the offense." (Docs. 19, 20, 48 at 358)

The probation office prepared a presentence investigation report ("PSR"), which provided for an adjusted offense level of 40,[2] and a criminal history category of II, yielding an advisory guideline range of 324 to 405 months.  This court adopted the PSR without objection and sentenced Nguyen to 364 months on count 1, and 120 months on count 2, to run concurrently.  (Doc. 28)

The Eleventh Circuit affirmed Nguyen's conviction.  (Doc. 63)  The U.S. Supreme Court denied Nguyen's petition for a writ of certiorari on February 23, 2009.

Nguyen timely filed a *pro se* 28 U.S.C. § 2255 petition alleging that his trial and appellate counsel rendered ineffective assistance.  (Doc. 70)  The government opposed habeas relief.  (Doc. 72)  This court, adopting the magistrate judge's report and recommendation, denied the petition and declined to issue a certificate of appealability.  (Docs. 77-80, 82, 84)  The Eleventh Circuit, however, granted a certificate of appealability as to one issue:  "Whether Nguyen's trial and appellate counsel were ineffective for failing to challenge, at sentencing and on direct appeal, the form of methamphetamine attributed to Nguyen, when no drugs were actually seized and the purity of the drugs attributed to him was untested."  (Doc. 88)  After

---

[2] The Probation Office calculated a base offense level of 36, pursuant to U.S.S.G. § 2D1.1(c)(2), based on the involvement of 1.371 KG of "ice," and added a two-level enhancement, pursuant to § 2D1.1(b)(1), for possession of a firearm, and a two-level increase, pursuant to 3C1.1, for obstruction of justice.

briefing, the issue was presented to the court of appeals on July 27, 2012. The Eleventh Circuit concluded that Nguyen was "entitled to an evidentiary hearing on his ineffective assistance of counsel claim,"[3] (Doc. 94 at 2), and vacated this court's order denying habeas relief. The court conducted an evidentiary hearing on January 29, 2013, and this issue is now ripe for review.

## II.    DISCUSSION

### A. Judicial Notice of DEA Stride Data

The court will first consider Nguyen's Post Hearing Motion to Take Judicial Notice of Stride Data. (Doc. 112) Counsel asks this court to take judicial notice of a one-page chart disseminated by the U.S. Department of Justice's Drug Enforcement Administration ("DEA") entitled "All Methamphetamine Purchase Prices, Domestic STRIDE[4] Data April 2005 – September 2008." (Doc. 112-1 at 1) The chart provides the average price per gram and average purity values for three-month periods between April 2005 and September 2008. The average prices range from $100.73 to $267.74, and the average purity percentage ranges from 37.3% to 71.1%. The chart states "[f]rom January 2007 through September 2008, the price per gram of methamphetamine increased 23.6%, from $148.91 to $184.09, while the purity

---

[3] The Eleventh Circuit held that, "[g]iven the definition of 'ice' in USSG § 2D1.1(c), Note (C) (defining 'ice,' for purposes of § 2D1.1, as 'a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity'), this is not one of those cases where the 'motion and the files and records of the case show that the prisoner is entitled to no relief.'" (Doc. 94 at 3) (citing 28 U.S.C. § 2255).

[4] The System to Retrieve Information from Drug Evidence ("STRIDE") is a database of drug exhibits sent to DEA laboratories for analysis. DEA.GOV / STRIDE DATA, http://www.justice.gov/dea/resource-center/stride-data.shtml (last visited Mar. 14, 2013).

decreased 8.3%, from 57% to 52%."

During oral argument, counsel for Nguyen asked the court to take judicial notice of the chart.  The government objected.  This court then ordered counsel to brief the question of whether judicial notice may properly be taken.  (Tr. at 40:14-44:3)

In support, Nguyen cites <u>Reece v. United States</u>, 119 F.3d 1462, 1468 n.10 (11th Cir. 1997), in which the Eleventh Circuit stated: "We take judicial notice of what the courts of appeals, the Sentencing Commission, the DEA, and NIDA have said about methamphetamine.  Their commentary on the subject is essentially indisputable."  (Doc. 112 at 1)  However, the government objects that <u>Reece</u> is inapposite because, there, the court judicially noticed a fact not disputed by either party.[5]  (Doc. 115 at 3-4)  The government also argues that the document offered by Nguyen contains facts that are subject to reasonable dispute because the document (1) is no longer available for public view via the hyperlink provided in the Eleventh Circuit brief,[6] (2) contains a disclaimer that the data "is not a representative sample of drugs available in the United States . . . and data are not collected to reflect national market trends," (3) contains information that is outside the time frame of

_____

[5] A fact not in dispute is not *ipso facto* judicially noticeable.  <u>See</u> <u>Shahar v. Bowers</u>, 120 F.3d 211, 214 n.6 (11th Cir. 1997) ("[A] 'fact' which is an improper subject of judicial notice [does not] automatically become[] a proper subject of judicial notice if no party objects to the 'fact'. . . .").

[6] While the document is no longer accessible via the link provided in the Eleventh Circuit brief, it remains posted to the DEA's website.  <u>See</u> All Methamphetamine Purchase Prices, Domestic STRIDE Data, April 2005-September 2008, *available at* http://www.justice.gov/dea/divisions/hq/2008/pr121108_PPGMeth_05to08graph111408_with%20Box.pdf (last visited Mar. 14, 2013).

the indictment, and (4) does not provide a breakdown of prices for methamphetamine sold in different regions of the United States.  (Id.)

In the Eleventh Circuit, "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process" because "the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court."  Shahar, 120 F.3d at 214.  The court may take judicial notice of a fact that is "not subject to reasonable dispute" because it is either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[7]  Fed. R. Evid. 201(b).  "Specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be judicially noticed."  Weaver v. United States, 298 F.2d 496, 498 (5th Cir. 1962).[8]

As stated by the Ninth Circuit, "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies[,]' [and] [t]he DEA is an 'administrative body. . . .'"  United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (internal citation omitted).  That said, there are limits.  See FCCI Ins. Group v. Rodgers Metal Craft, Inc., 2008 WL 4185997, at *1 (M.D. Ga.

---

[7] "[T]he kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." Shahar. 120 F.3d at 214.

[8] All cases decided by the former Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Sept. 9, 2008) (no judicial notice of data compiled on an official government website operated by the Federal Motor Carrier Safety Administration); see also United States v. Judge, 846 F.2d 274, 276 (5th Cir. 1988) (declining to take judicial notice of regulations in a DEA manual).

The proffered chart states that it "reflects all evidence submitted to DEA laboratories for analysis," which suggests that it may be reliable to show "the best information *currently available on changes in methamphetamine price and purity*." (Doc. 112-1 at 1 (emphasis added))  However, it would be inappropriate to rely on the data for anything more than what it purports to represent.  This is exactly what Nguyen requests.  Nguyen asks this court to extrapolate from the data the purchase price of methamphetamine at the time of the conspiracy.  (Tr. 42:6-7)  That is, Nguyen asks the court to take notice that "[i]n September 2006 when the conspiracy ended, the mean price per gram for methamphetamine was $177.39 with a purity mean of 48.8%, [which] would yield a price of $290.00 per gram and somewhere over $8,000.00 for an ounce" of 80% pure methamphetamine.  (Doc. 112 at 2)  The court cannot make this leap.  There is no evidence how many samples were collected over the relevant periods, or what the medium or mode values are.  Perhaps more importantly, the chart reflects values of averages collected from all over the country, which is not probative of the purity level of methamphetamine purchased by Nguyen.  Cf. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (while "experts commonly extrapolate from existing data" it is a different thing entirely to permit an expert opinion "connected to existing data only by . . . ipse dixit "); United States

v. Coleman, 483 F. App'x 419, 420-21 (10th Cir. 2012) (concluding that "it would be a gross misuse of statistical data to extrapolate about [a particular officer's conduct] merely from aggregate data that covers many other individuals").  Put simply, the DEA data cannot be used to reliably determine the purity level of methamphetamine that Nguyen is alleged to have conspired to purchase.  Because the conclusion offered by Nguyen is not readily apparent from the data, is highly questionable, and subject to "reasonable dispute," the court declines to take judicial notice of it.

### B. Nguyen has not met his burden on remand

In endeavoring to vacate his sentence on the basis of ineffective assistance of counsel, Nguyen bears the burden of proving both his attorney's deficient performance and the prejudice flowing therefrom.  Strickland v. Washington, 466 U.S. 668, 693-96 (1984).  The Eleventh Circuit, in remanding this case, stated that

> Mr. Nguyen shall have the burden of showing (1) that his counsel rendered deficient performance by failing to object, and (2) that there is a reasonable probability that the deficient performance affected the outcome of the sentencing hearing (i.e., that there is a reasonable probability that, had counsel objected, the government would not have been able to establish that the methamphetamine was "ice" under 2D1.1(c), Note (C)).

(Doc. 94 at 3)  Nguyen claims that he was prejudiced by his trial counsel's failure to object to the PSR's characterization of the methamphetamine as "ice."  In support, he points to "binding Circuit precedent" in United States v. Patrick, 983 F.2d 206 (11th Cir. 1993) and United States v. Ramsdale, 61 F.3d 825 (11th Cir. 1995) that scientific testing is necessary to prove the type of methamphetamine at issue for

purposes of sentencing.  See Doc. 111-1 at 2.

        The court is not convinced that Eleventh Circuit precedent requires that scientific testing be performed in order to sentence for "ice", particularly in a case like this one in which no drugs were recovered.  Other circuits that have considered this issue have come to the opposite conclusion.  United States v. Lugo, 702 F.3d 1086, 1089 (8th Cir. 2013) ("When no quantity [of methamphetamine] has been recovered, the government may prove the purity of quantities attributed to the defendant by circumstantial evidence, for example, a conspirator's reliable testimony. . . ."); United States v. Walker, 688 F.3d 416, 424 (8th Cir. 2012) ("The specificity of the Guidelines definition of 'ice'—requiring 80% purity—does not fundamentally change the means by which the government may meet its burden . . . ."); id. at 423 ("[t]he Guidelines do not require the government to establish the identity, quantity, or purity of methamphetamine by laboratory analysis"); id. at 425 ("That [the defendants] and their coconspirators did not have a scientific or technical understanding of the term 'ice' . . . does not necessarily preclude the district court from finding the methamphetamine . . . was 'ice.'"); see also United States v. Verdin-Garcia, 516 F.3d 884, 896 (10th Cir. 2008) ("Narcotics need not be seized or tested to be held against a defendant at sentencing . . . . Laboratory test results are perhaps more persuasive evidence of amounts and purities than eyewitness testimony . . . but [such testimony] is not unreliable as a matter of law.").  When no drugs are recovered, "[t]he issue is whether . . . purity is established by a preponderance of the total sum of the evidence."  Id.;  U.S. v.

8

Cockerill, No. 99-4634, 2000 WL 852608, at *2-3 (4th Cir. June 28, 2000)
(unpublished per curiam) (In [this] case, the bulk of the methamphetamine used to
calculate his offense level was not seized and could not be analyzed, but there was
evidence through [witness] testimony that it was of very good quality. The
sentencing guidelines do not require absolute certainty about the amount of drugs
or their purity when the drugs are not seized or the amount seized does not reflect
the scale of the offense. . . . . In such cases, the district court may estimate the
quantity, and may use whatever reliable evidence is available. . . . . *see also* USSG §
6A1.3(a) [in resolving disputed sentencing factors, district court may consider any
information with sufficient indicia of reliability to support its probable accuracy]).

Second, Patrick and Ramsdale are distinguishable because those cases were
decided under a different sentencing scheme that distinguished not between "ice"
methamphetamine, and less pure methamphetamine, but between D-
methamphetamine and L-methamphetamine.  Throughout the Patrick trial, the
witnesses and government referred to the seized drugs only as "methamphetamine,"
and an expert witness testified that "methamphetamine" was a "slang" term that
could refer to either the D- or L- isomer.  Patrick, 983 F.2d at 209.  Because the
Patrick court was apprised that use of the term "methamphetamine" was
ambiguous, and because the government offered no evidence that the Defendant
was associated with one isomer as opposed to the other, it was error to apply a
higher sentence[9] based on the assumption that the drugs were D-

---

[9] When Patrick was decided, "[t]he involvement of regular D-methamphetamine

methamphetamine.  It was with this understanding that led the Eleventh Circuit to state that "[t]here must be proof, not a play on words, to justify the added deprivation of liberty that follows the scoring of the drug as D-methamphetamine." Id. at 208.

The same play on words does not exist here.  The participants throughout the trial used the term "ice," and it was unambiguous what "type" of methamphetamine was involved in the offense.  At the evidentiary hearing, Nguyen's trial counsel testified that neither his client nor anyone else made an issue of "whether the substance was ice." (Tr. 10:8-15)  Counsel also stated that he would have objected had his client told him that the drugs were not ice.  (Tr. 22:22-24)

In addition to the lack of evidence that ice was not involved, there was ample evidence, including testimony from five co-conspirators, upon which the court could find (by a preponderance) that the offense did involve "ice".  As this court explained previously:

> Although no methamphetamine was seized in Nguyen's case, five of his fellow drug dealers testified at his trial that the substance that Nguyen sold them and/or that they sold to him was "ice."  For instance, co-conspirator/co-drug dealer/co-user William Johnson testified that methamphetamine "ice" "looks like rock salt or salt, big chunks of salt." He explained: "[t]here's ice, which is a very strong, powerful substance, and there's regular methamphetamine, which is a powder, completely different looking."  When asked, "which of the kinds of drugs did you get from the defendant, which form of methamphetamine," Johnson stated, "ice."  In response to a question, "and I take it you used some of that ice that you got from the defendant," Johnson stated, "yes ma'am." Another co-conspirator/drug dealer, Voeruth Meas, testified that he purchased "ice" from Nguyen in "eightball" quantities, which he

require[d] a significantly harsher sentence under the sentencing guidelines than for an equal quantity of L-methamphetamine." Id. at 208 (citing U.S.S.G. § 2D1.1).

> explained was "3.5" grams of "ice." The testimony of Johnson and Meas, which mirrors the testimony of Nguyen's other co-conspirators, reflects their experience with and knowledge of the methamphetamine drug trade and establishes their competence in identifying the drugs in question. Having reviewed the record in its entirety, the Court finds the testimony of these seasoned drug dealers and users competent, reliable, and sufficient to prove that the form of drug that Nguyen bought from and sold to these individuals was "ice."

Nguyen v. United States, 2010 WL 5463812, at *16 (S.D. Ala. Oct. 22, 2010), adopted by 2010 WL 5462545 (S.D. Ala. Dec. 28, 2010) (internal citations omitted). Because ample evidence existed that the drug at issue was "ice", and that term as used during the trial was unambiguous, this case is readily distinguishable from Patrick, which, in any event, does not require that testing be done to establish purity. See United States v. Trout, 68 F.3d 1276, 1281 (11th Cir. 1995) (declining to interpret Patrick as requiring particular scientific testing); United States v. Carroll, 6 F.3d 735, 745 (11th Cir. 1993) ("Patrick did not decide any issue related to purity. . . ."); see Patrick, 983 F.2d at 210 (quoting United States v. Francesco, 725 F.2d 817, 821 (1st Cir. 1984)) ("[T]he government need not prove 'that a term used in its commonly understood sense has no other possible meaning—at least until the possibility of another meaning is raised by the defense.'").

At the evidentiary hearing, Nguyen presented no record evidence to refute the testimony of his co-conspirators. Nguyen's bare assertion that his attorney failed to tackle the issue is not enough to make out a claim for ineffective assistance. See Jackson v. Virginia, 443 U.S. 307, 324 (1979) (holding that a defendant is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt

beyond a reasonable doubt").  To demonstrate deficiency, Nguyen must show that

his attorney failed to do something that he *should* have done, not merely something

that he *could* have done.  See Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.

1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not

constitute ineffective assistance.").

Furthermore, to establish prejudice, Nguyen must show that that there is a

reasonable probability that, had his counsel objected, the government would not

have been able to establish that the methamphetamine was "ice" under § 2D1.1(c),

Note (C)).  The only testimony presented at the evidentiary hearing was that of

Nguyen's trial attorney, Dennis Knizely.   Although Knizely had no specific

recollection of the sentencing hearing, he did recall that, in view of the trial

evidence which referred to the substance at issue as "ice",  "it was never an issue

from the client or anyone else as to whether the substance was ice."  (Doc. 116, pp.

11, 19-20, 22 ).  There was no testimony, from the defendant or any other source,

that the substance at issue in the case was not "ice" as defined by the Sentencing

Guidelines.   Because the testimony admitted at trial concerning the nature of the

controlled substance at issue was sufficient to support a finding at sentencing, by a

preponderance of the evidence, that it was "ice", the defendant has not met his

burden of demonstrating a reasonable probability that, had his lawyer objected, the

government would not have been able to establish that fact.

## CONCLUSION

Nguyen has failed to show either that his attorney's performance was deficient or that has been prejudiced.  It is therefore **ORDERED** that Nguyen's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 70), be and is hereby **DENIED**.  It is further **ORDERED** that the clerk of the court shall transmit a copy of this order to Petitioner by certified mail, return receipt requested.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE